**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SYLVESTER W.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19 C 4263** |
| **v.** | ) | |
| | ) | **Magistrate Judge Beth W. Jantz** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Sylvester W.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 16, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 32, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I.     Procedural History

On December 16, 2015, Plaintiff filed a claim for DIB and SSI, alleging disability since

April 22, 2015, due to back injuries.  [Dkt. 11-1, R. at 17.]  Plaintiff's claim was denied initially

and again upon reconsideration.  [R. 99-100, 127-28.]  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on February 22, 2018.  [R. 34-85.]  Plaintiff

personally appeared and testified at the hearing.  [R. 34, 46-74.]  Vocational expert ("VE")

Thomas F. Dunleavy also testified.  [R. 74-83.]  On August 9, 2018, the ALJ denied Plaintiff's

claim for benefits, finding him not disabled under the Social Security Act.  [R. 17-27.]  Plaintiff

then obtained counsel and requested review of that decision.  [R. 5, 11-13.]  The Social Security

Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision

as the final decision of the Commissioner.  [R. 1-3.]

### II.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security

Administration's five-step sequential evaluation process.  [R. 17-27.]  The ALJ found at step one

that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of

April 22, 2015.  [R. 19.]  At step two, the ALJ concluded that Plaintiff had the following severe

impairments: degenerative disc disease of the spine with L5 radiculopathy into the lower right

extremity and obesity.  [R. 19-21.]  The ALJ concluded at step three that his impairments, alone

or in combination, do not meet or medically equal one of the Social Security Administration's

listings of impairments (a "Listing").  [R. 21-23.]  Before step four, the ALJ determined that

Plaintiff retained the residual functional capacity ("RFC") to perform light work with the

following additional limitations: he should never climb ladders, ropes, or scaffolds and should

only occasionally climb ramps and stairs; he can occasionally balance, stoop, crouch, kneel, and crawl; he should avoid concentrated exposure to extreme cold, wetness, or humidity; and he requires the ability to sit for 5 minutes after standing for 30 minutes provided that he is not off task more than 10% of the work period. [R. 23-25.] At step four, the ALJ concluded that Plaintiff would be able to perform his past relevant work as a telemarketer as generally performed. [R. 25-26.] In the alternative, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 26-27.]

## DISCUSSION

### I.    Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir.

2005).  "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner."  *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court.  42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).  The Court plays an "extremely limited" role in reviewing the ALJ's decision.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria.  *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted).  "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses."  *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014).  While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law."  *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings."  *Beardsley*, 758 F.3d at 837.  Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind[his] decision to deny benefits."  *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673

(7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II.    Analysis

Plaintiff argues that the ALJ (1) failed to fully and fairly develop the record, (2) erred at step 4 by misclassifying Plaintiff's past relevant work, (3) did not support his RFC determination with substantial evidence, and (4) failed to properly evaluate Plaintiff's subjective symptoms. [Dkt. 17, Pl.'s Mem. at 3-15; dkt. 36, Pl.'s Reply at 1-13.] The Commissioner argues in opposition that the ALJ adequately developed the record, supported his RFC determination with substantial evidence, and properly assessed Plaintiff's subjective symptom statements. [Dkt. 33, Def.'s Mem. at 2-16.] Further, the Commissioner contends that Plaintiff's step 4 argument is moot because of Plaintiff's failure to challenge the ALJ's alternative findings at step 5. [*Id.* at 7-8.] For the reasons that follow, the Court affirms the ALJ's decision.

### A.  The ALJ adequately developed the record.

An ALJ has an "enhanced" duty to develop a "full and fair record" when a plaintiff appears without counsel. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). This duty involves supplementing the record as needed by "asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* The Court generally upholds, however, the ALJ's "reasoned judgment" regarding how much evidence to gather, and any omission must be "significant"—meaning, prejudicial—for the Court to determine that an ALJ abdicated his duty to develop the

record. *Id.* Practically speaking, a complete record is "always elusive" and "there is no absolute requirement that an ALJ update the medical records to the time of the hearing." *Id.* at 1099.

Plaintiff argues that the ALJ failed to fulfill his "heightened" duty to fully and fairly develop the record, a duty that the ALJ had because Plaintiff was unrepresented by counsel at the administrative hearing. [Pl.'s Mem. at 3-6; Pl.'s Reply at 1-4.] Specifically, Plaintiff faults the ALJ for not obtaining additional medical records from 2018 concerning osteoarthritis in Plaintiff's hip (including a hip x-ray) and for not adequately questioning Plaintiff at the hearing regarding specific physical limitations. [*Id.*] The Commissioner responds that the ALJ took sufficient steps to gather additional medical evidence and question Plaintiff regarding his limitations, and that Plaintiff has not shown how any omission of the new medical records or failure to ask those questions prejudiced him. [Def.'s Mem. at 2-7.]

As to the medical records, the ALJ took sufficient steps in order to ensure that the record was sufficiently complete before he rendered a decision. At the February 2018 hearing, the ALJ confirmed with Plaintiff that there were records missing from Stroger Hospital from "August 2016 up until the present" concerning Plaintiff's "new injection." [R. 36.] Plaintiff then stated that he had another appointment with the pain clinic coming up in April 2018. [R. 38-39.] The ALJ gave an envelope to Plaintiff and explained that Plaintiff could mail in records from that upcoming April doctor's visit if he hadn't received a decision by then. [R. 39-40.] The ALJ promised to "get those Stroger records" for Plaintiff, and also told Plaintiff that he could mail in any new records from the next visit too. [R. 40.] At that point, Plaintiff also identified records that were missing from 2017 from "Providence," and the ALJ also agreed to obtain those records. [R. 40-41.] Before beginning to question Plaintiff, the ALJ reiterated that he would obtain "Stroger [records] from August 2016 to the present" (which was February 2018 at that

point), and "Providence [records] from June 2016 to the present." [R. 44-45.] Indeed, the ALJ thereafter obtained the promised records. [*See* R. 384, 411, 480 (ALJ's requests); 381-534 (medical records).] Thus, the ALJ followed through with gathering all the relevant records through the date of the hearing, February 22, 2018.

But Plaintiff now contends that the ALJ should have done more. On May 9, 2018, three months before the ALJ issued his decision, the Commission received a letter from Plaintiff in which he reported that, subsequent to the hearing in February 2018, he had x-rays on his right hip on April 23, and that he was scheduled for a hip injection in July at Stroger Hospital, but he did not include those records with his letter. [R. 536.] Instead, he included an October 2017 emergency room record. [R. 537-38.] Plaintiff argues that the ALJ should have obtained the Stroger records concerning his hip—an ailment for which there is overall minimal evidence in the record—and that those records would have affected the ALJ's RFC determination. [Pl.'s Mem. at 4.] Plaintiff did not submit these records to the Appeals Council but now has submitted them to this Court as an exhibit. [Dkt. 18, Pl.'s Exh.] They post-date the February 2018 hearing, and are an x-ray from April 2018 that shows that Plaintiff had "[m]ild right hip osteoarthriti[s]," and a July 2018 record that shows he received a steroid injection in that hip. [*Id.*]

The Court finds Plaintiff's arguments unpersuasive for two reasons. First, the ALJ had explained to Plaintiff what records the ALJ would obtain and what records it fell to Plaintiff to supply; the April and July 2018 records from Stroger Hospital fell outside the scope of the ALJ's responsibility to request because they post-dated the hearing and were the records from the upcoming visit that the ALJ told Plaintiff to submit using the provided envelope. [*See* R. 36-45.] And although Plaintiff maintains that the ALJ's instructions were not clear enough for a pro se

plaintiff, [*see* Pl.'s Reply at 1-2], Plaintiff understood the ALJ's instructions well enough to submit other, additional records in his possession, which tends to undermine his contention. [*See* R. 536-38.] The ALJ thus drew a reasonable line at what records he would obtain for Plaintiff, recognizing the difficulty in obtaining complete medical records in any matter, because it is not uncommon for individuals to have ongoing treatment. [R. 39.]

Second, Plaintiff's assertion that the failure to obtain these records about his hip was prejudicial is weakened by Plaintiff's approach in the case. Counsel began representing Plaintiff following the ALJ's decision on September 25, 2018, and requested additional time before the Appeals Council to review the case and submit additional evidence. [R. 11-12, 176-77.] But Plaintiff did not submit the 2018 records concerning his hip to the Appeals Council, [*see* R. 4, 274-76], and instead waited until appealing to this Court to even request and submit the records, [*see* dkt. 18, Pl.'s Exh.]. If Plaintiff believed that the new medical evidence was important and would have made a difference, Plaintiff should have endeavored to raise that argument before the Appeals Council in the first instance.

In any event, the Court declines to find that the 2018 records concerning hip arthritis— which condition was not the basis of Plaintiff's request for benefits in the first instance, [*see* R. 197]—are a "significant" omission from the record where the ALJ had an otherwise full view of Plaintiff's medical ailments from April 22, 2015 through the time of the hearing. *Cf. Nelms*, 553 F.3d at 1099 (2-year gap in medical records was significant and prejudicial). Plaintiff asserts that the RFC determination would have likely been different had the ALJ considered this evidence, because osteoarthritis in his hip would affect his ability to sit, stand, and walk. [Pl.'s Reply at 2.] But the evidence itself did not suggest any particular functional

limitations (and Plaintiff does not specifically identify any), and this is mere speculation insufficient for Plaintiff to show that the omission was prejudicial.

Turning to Plaintiff's argument that the ALJ did not adequately question Plaintiff at the hearing, the Court again determines that the ALJ fulfilled his obligation to develop the record. Plaintiff faults the ALJ for not asking specific questions of Plaintiff concerning: (1) how long he could stand and walk in an 8-hour period, (2) how long he would need to rest before resuming standing and walking, and (3) how many pounds he could lift and carry at a time. Plaintiff also faults the ALJ for not obtaining clear answers from Plaintiff, but in the same portion of his brief, he cites examples of questions the ALJ asked that were intended to probe at the same subject matter for these first two questions and quotes examples of his own non-answers. [*See* Pl.'s Mem. at 5-6.]

Plaintiff maintains that the ALJ should have kept pushing Plaintiff for answers, however. [*Id.*] Ultimately, Plaintiff's argument in this respect amounts to nit-picking the ALJ's questioning. The ALJ asked Plaintiff "[h]ow long can [he] stand or walk before [he had] to sit down," and Plaintiff answered by saying "not long" but that the injections had made things better. [R. 67.] The ALJ later asked how long he could stand and walk now at a time, and Plaintiff answered with a story that he could complete a 5- or 10-minute walk to the hospital to get medications. [R. 68.] After that answer, the ALJ twice asked how long Plaintiff would need to sit before he could get back up again, and Plaintiff gave a non-answer that after walking he would need to go home to lay down and stretch out his leg. [R. 69.] The ALJ later asked the same question a third time, which Plaintiff answered with a long answer concerning his previous job. [R. 72-73.] From reviewing the transcript, the ALJ made an effort on multiple occasions to

elicit relevant information from Plaintiff, and Plaintiff's own non-responsiveness prevented these questions from getting answered more fully.

Additionally, although the ALJ did not specifically ask a question about how much Plaintiff could lift and carry, Plaintiff provided this information unprompted—that doctors had limited him to 30 pounds at a time, [R. 70, 72].  In addition to the questions discussed above, the ALJ also asked Plaintiff about his daily activities, his prior work, and why he thought he was unable to work.  [*See* R. 65-74.]  The ALJ thus fulfilled his duty to develop the record with Plaintiff's testimony, and Plaintiff's argument to the contrary is rejected.  *See Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006) (rejecting argument regarding adequacy of questioning where plaintiff seemed to want "the judge [to] have asked questions that would have cued [plaintiff] to exaggerate her condition").

**B. The ALJ's purported error at step 4 is harmless.**

Plaintiff also contends that the ALJ erred at step 4 by mis-classifying his past relevant work as a telemarketer and that it should have been classified as a composite job without an equivalent in the Dictionary of Occupational Titles ("DOT").  [Pl.'s Mem. at 6-8.]  Further, Plaintiff argues, the ALJ erred when he thus concluded that Plaintiff could perform the telemarketer job as *generally performed* in the national economy, because the ALJ could only find Plaintiff not disabled at step 4 if the ALJ concluded that Plaintiff could perform the composite job as he *actually performed* it.  [*Id.*]

The Court need not weigh into the merits of Plaintiff's contentions, however.  Even assuming that Plaintiff is correct, any error at step 4 is ultimately immaterial.  That is because the ALJ made an alternative finding at step 5 that there were other jobs Plaintiff could perform in the national economy.  [*See* R. 26-27.]  Plaintiff does not challenge this step 5 determination, except

to later argue that the ALJ's RFC determination and inclusion of cashier II as a job he could perform was erroneous. [*See* Pl.'s Mem. at 10.] But even excluding that cashier job, the ALJ found at step 5 that there were other jobs existing in sufficient numbers in the national economy—mail clerk and assembler—that Plaintiff could perform, [R. 26], and thus the ALJ's finding that Plaintiff was not disabled at step 5 is sufficient to overcome any error at step 4. *See Guranovich v. Astrue*, 465 Fed. App'x 541, 543 (7th Cir. 2012) ("Because the ALJ's decision would be the same under this alternative RFC at step five, any error at step four was harmless."); *Ziegler v. Astrue,* 336 Fed. App'x 563, 570–71 (7th Cir. 2009) (finding any error at step four "immaterial" so long as the Court upholds the ALJ's alternative finding at step five).

### C. The ALJ's RFC determination was supported by substantial evidence.

Plaintiff next challenges the ALJ for not explaining how he arrived at the limitation in the RFC that Plaintiff requires the ability to sit for 5 minutes after standing for 30 minutes provided that he is not off task more than 10% of the work period. [Pl.'s Mem. at 8-11; *see* R. 23.] According to Plaintiff, the evidence in the record does not support this limitation, but he cites solely to his own testimony and subjective reports on this point. [Pl.'s Mem. at 9-11.] For example, as to his ability to sit for 5 minutes after standing for 30 minutes, Plaintiff says that the following undermines the ALJ's limitation: his testimony that he would have to rest after walking approximately 5 to 10 minutes; he had to keep shopping trips under an hour because he struggled to stand; he suffered severe pain while working despite taking frequent breaks; he was unable to work because of "excruciating" pain when sitting, standing, or performing any consistent action, and his subjective reports that he could not stand more than 15 or 20 minutes without an increase in his lower back pain; he could walk only 20 minutes before he needed to

rest for at least 15 minutes; he performed most of his chores sitting down; he could not stand for 20 minutes at a time; and he could walk 2 blocks before needing to rest. [*Id.*]

The ALJ's RFC determination, however, is supported by substantial evidence. The only medical opinion in the record came from the state agency physician, Dr. Stevens, who found that Plaintiff could perform light work[3] with additional postural limitations, opining that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently crouch; and occasionally balance, stoop, kneel, crawl, and climb ramps, stairs, ladders, scaffolds, and ropes. [R. 110-11.] Further, the ALJ reviewed the medical evidence, which established that Plaintiff had degenerative disc disease that caused pain to radiate into his right leg and reflected sometimes positive straight leg raising tests and antalgic gait, but normal range of motion and strength and no need for an assistive device. [R. 20-21, 23-25.] Additionally, as discussed in more depth below, the ALJ considered Plaintiff's subjective symptoms and found them not entirely consistent with the record. [R. 25.] The ALJ's RFC finding incorporated the limitations found by Dr. Stevens and imposed even further limitations, including the requirement that Plaintiff sit for 5 minutes after standing for 30 minutes, provided that he is not off task for more than 10% of the workday. [R. 23.] Even if the ALJ erred in not specifically explaining where the sit/stand and off-task limitation came from, the error is harmless where, as here, no physician suggested more restrictive limitations. *See Okor v. Berryhill*, No. 17 C 4984, 2018 WL 6192201, at *6

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

(N.D. Ill. Nov. 28, 2018) ("Therefore, the ALJ's lack of discussion regarding the reasons he adopted the particular sit/stand option is harmless error, as it is even more limiting than the restrictions recommended by the agency physicians."); *see also Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [that plaintiff] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.").

**D. The ALJ's subjective symptom evaluation was not "patently wrong."**

When evaluating a plaintiff's symptoms, the factors the ALJ may consider include daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms. 20 C.F.R. § 404.1529(c)(3). The Court will overturn the ALJ's evaluation of Plaintiff's subjective statements about his symptoms only if it was "patently wrong." *Summers*, 864 F.3d at 528. The ALJ must support his analysis with "specific reasons supported by the record." *Pepper*, 712 F.3d at 367; *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper*, 712 F.3d at 362 (internal quotation omitted).

In finding that Plaintiff's subjective symptom statements were not entirely consistent with the record, the ALJ sufficiently articulated his reasoning. The ALJ discussed Plaintiff's reports of back pain that radiated down his leg throughout the decision. [R. 20-25.] Further, the ALJ reviewed Plaintiff's medical history and the objective medical findings, including the MRI that identified his degenerative disc disease, the examinations where Plaintiff had normal strength and range of motion in his spine but positive straight leg raising tests, and the physical therapy visits where he had an antalgic gait and the normal office visits where he did not.

[R. 23-25.] The ALJ also pointed out that Plaintiff's treatment had been conservative, consisting of Ibuprofen and Gabapentin medications as well as physical therapy and steroid injections, and that Plaintiff had been non-compliant with treatment recommendations, including Plaintiff having quit physical therapy and having not lost weight. [R. 24-25.]

Plaintiff argues that the ALJ's conclusion that Plaintiff's statements concerning his symptoms are "not entirely consistent" with the record is meaningless boilerplate and warrants remand here because the ALJ failed to adequately explain his findings. [Pl.'s Mem. at 11.] Plaintiff's challenges to the ALJ's analysis of his symptoms boil down to either a failure to consider a particular factor or a failure to explain one further. [*See* Pl.'s Mem. at 11-15.] None of them persuade the Court that the ALJ's assessment was "patently wrong," however. *Summers*, 864 F.3d at 528.

Plaintiff first argues that the ALJ erred (1) by not discussing Plaintiff's activities of daily living, including that he sat in his house all the time, struggled to get dressed, and performed his chores while seated, and (2) by not considering that Plaintiff's medications made him dizzy. [*Id.* at 12.] True, the ALJ did not specifically mention these parts of the record, but he was not required to discuss *every* factor nor every piece of evidence. *See Pepper*, 712 F.3d at 362. The ALJ focused on those factors that he found to be most pertinent.

Next, Plaintiff maintains that the ALJ should not have equated his inability to lose weight with ignoring his doctors' recommendations to do so, drawing a distinction between *advising* him to lose weight and *prescribing* him the same. [*Id.* at 12-14.] But the ALJ did not overemphasize this point; instead, he cited Plaintiff's lack of weight loss in a broader context, noting that Plaintiff seemed disinterested in treatment overall and more interested in obtaining disability. [R. 24.] Similarly, Plaintiff says that the ALJ held his request for a cane against him

without exploring *why* he wanted a cane and why he was not prescribed one (the physical therapist concluding it would actually worsen Plaintiff's gait). But again, this misses the larger point the ALJ made with repeated references to Plaintiff's request for a cane; the ALJ tied it to Plaintiff's overall reluctance to pursue further treatment and desire for a seemingly easy fix in the form of a cane and disability. [Pl.'s Mem. at 14; R. 24-25.] The ALJ's omission of the specific reason why a cane was not prescribed is not cause for remand because, again, the ALJ does not have to address every piece of evidence. *See Pepper*, 712 F.3d at 362.

Lastly, Plaintiff argues that the ALJ should have explained how Plaintiff's conservative treatment diminished his reported symptoms. [Pl.'s Mem. at 15.] The ALJ, however, was not required to specifically link Plaintiff's treatment and any finding on Plaintiff's subjective symptom statements. Rather than ignore other treatment options, the ALJ explained that Plaintiff had not been prescribed narcotics nor had surgery been recommended. [R. 25.] *Cf. Thomas v. Colvin*, No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015) (error where ALJ failed to discuss all treatment and did not indicate what treatment would have been available). This discussion was adequate to explain the ALJ's ultimate conclusion that Plaintiff's reports of pain were not as severe as alleged. [R. 25.]

In sum, Plaintiff has not shown that the ALJ's decision was "patently wrong." *Summers*, 864 F.3d at 528. Even if the ALJ's explanation was not "perfect," he sufficiently explained his reasoning behind determining that Plaintiff's subjective symptom statements were not entirely consistent with the record. *See Schreiber v. Colvin*, 519. Fed. App'x 951, 961 (7th Cir. 2013).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 16] is denied, and the Commissioner's motion for summary judgment [dkt. 32] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: May 19, 2022

_____
BETH W. JANTZ
United States Magistrate Judge